CRONIN v. UNIONAID LIFE INSURANCE COMPANY.

Opinion delivered October 26, 1931.

*Streeter Speakman* and *John D. Arbuckle*, for appellant.

*Duty & Duty*, for appellee.

McHANEY, J. This is a suit upon a foreign judgment, obtained by appellant against appellee in the district court of Creek County, Oklahoma, on February 4, 1928. The only question presented is the validity of the judgment of the Oklahoma court, and this is dependent upon the validity of the service there had. The judgment roll itself recites that "the defendant [appellee here] has been duly served with summons in all respects as provided by the laws of the State of Oklahoma."

The facts are that in 1915 the Mutual Aid Union, a mutual assessment insurance company of Arkansas, issued a policy upon the life of Frances Cronin of Depew, Oklahoma, in which appellant was named as beneficiary. In December, 1926, appellee was organized as a stipulated premium company under the laws of this State, and shortly thereafter entered into a re-insurance contract with the Mutual Aid Union by which it re-insured its membership, agreed to collect the assessments and carry out the contracts re-insured. The Mutual Aid Union was dissolved in January, 1927, and ceased to do any business or to exist as a corporation. Frances Cronin died on December 1, 1927, and on December 28, 1927, this suit against appellee was filed and service attempted to be had by serving the Secretary of State of Oklahoma, under authority of § 5442, Oklahoma Stat. Ann. 1921. This statute provides that if any foreign corporation does business in that State and has failed to appoint an agent for service, or has failed to file a duly authenticated

copy of its articles of incorporation or charter with the Secretary of State, or has failed to pay the license fee required, then it may be sued by service on the Secretary of State. Appellee had no knowledge that a suit had been filed until after judgment. The circuit court of Benton County made a finding for appellee and rendered judgment accordingly.

Appellant relies upon the above statute and the decision of the Oklahoma Supreme Court in *Title Guaranty & Surety Co.* v. *Slinker,* 42 Okla. 811, 143 Pac. 41, sustaining similar service on a foreign corporation under authority of said statute. The facts in that case are very materially different from this case. There the court said: "The record shows that the surety is a Pennsylvania corporation, and had been duly authorized to do business in the Indian Territory prior to statehood, and did, in pursuance of such authority, engage in business in that territory, and prior to statehood executed the bond in suit; that upon the advent of statehood the surety withdrew all of its agents from the State, except the one located at Muskogee, and that this agent was retained for the purpose of collecting premiums on bonds that had been executed prior to statehood, and did not have authority to execute any new bonds; that no attempt was made by the surety to have the bonds canceled that had been executed, but that the same were continued in force and the annual premiums collected thereon; that it did not solicit or execute any new bonds in Oklahoma after statehood."

Under that state of facts the court held that the corporation was doing business in the State. In this case, however, the undisputed proof is that appellee has done no business in Oklahoma except to collect premiums by mail. It has no agent or office there. It solicits no contracts there and has never done so. The Mutual Aid Union may have done business in Oklahoma in violation of its laws, but appellee has no agent located therein to collect premiums on the old policies, and maintains no office therein. It collects at Rogers, Arkansas, by use of the United States mails. We are therefore of the opinion

that appellee was not "doing business in the State of Oklahoma," within the meaning of said § 5442, and that service upon the Secretary of State in this action conferred no jurisdiction on the Oklahoma court of the person of appellee. *Provident Savings Life Assurance Society* v. *Commonwealth of Kentucky,* 229 U. S. 103, 36 S. Ct. 34. In that case Mr. Justice HUGHES, speaking for the court, said: "But the continuance of the contracts of insurance already written by the company was not dependent on the consent of the State. It is true that acts might be done within the State in connection with such policies (as, for example, in maintaining an office or agents, although new insurance was not written or solicited) which could be considered to amount to the continuance of local business. In such cases it would be the actual transaction of business that would furnish the ground of the license exaction and in the manner of existence of the obligations under policies previously written. These policies are contracts already made; the State cannot destroy them or make their mere continuance independent of acts within its limits a privilege to be granted or withheld. Neither the continuance of the obligation in itself nor acts done elsewhere on account of it can be regarded as being within the State's control." Some of our own late decisions on the subject are *Linograph Co.* v. *Logan*, 175 Ark. 194, 299 S. W. 609; *Equitable Credit Co.* v. *Rogers,* 175 Ark. 205, 299 S. W. 747; *Stubbs* v. *Wright,* 176 Ark. 469, 2 S. W. (2d) 1087; *Chicago Title & Trust Co.* v. *Hagler Special School Dist.*, 178 Ark. 443, 12 S. W. (2d) 881; *Security Trust Co.* v. *Martin,* 178 Ark. 518, 12 S. W. (2d) 870. So in this case, appellee acquired the Oklahoma contracts. from the Mutual Aid Union, and it had the right to continue them by acts done in this State, and such acts cannot be regarded as doing business in that State.

This holding does not violate the good faith and credit clause of the Constitution of the United States. As said in the recent case of *Lewis* v. *United Order of Good Samaritans,* 182 Ark. 914, 33 S. W. (2d) 53: "The

general rule is that the full faith and credit clause of the Constitution and the laws enacted thereunder apply only where the court rendering the judgment had jurisdiction.'' It was further held in that case that a recital of service in the foreign judgment was not conclusive, and that it could be impeached for want of jurisdiction by showing that no service was had and that there was no entry of appearance. Such a judgment is conclusive on collateral attack except for fraud or want of jurisdiction.

It necessarily follows from what we have said that the judgment of the circuit court is correct, and must be affirmed. It is so ordered.