COPELAND *v*. NATIONAL UNION FIRE INSURANCE COMPANY.

Opinion delivered October 8, 1928.

*W. U. McCabe, Noel S. Chaney* and *Williamson & Williamson*, for appellant.

*S. M. Casey*, for appellee.

McHANEY, J. Appellant, Copeland, was the agent of the appellee in the conduct of a fire insurance business in Stone and other counties, and the other appellants were the sureties on the bond executed by him to appellee, conditioned that said "L. W. Copeland, as agent of the said company, shall faithfully and punctually pay over to the said company all amounts due or that may become

due to it from time to time, for moneys collected or received by him for premiums on policies of insurance and renewals thereof, or for any other account whatever, and shall with fidelity do and perform the duties assigned to him as the agent of said company, according to the best of his ability," etc.

This action was instituted against all the appellants to recover the sum of $600.45 as a balance due appellee for premiums collected by appellant, Copeland, which had not been remitted to it. An itemized statement of account was filed with the complaint, beginning in March, 1924, showing in detail the names of the insured, premiums collected, the commission allowed, and the balance due the company.

Copeland answered, denying that he was indebted in the sum claimed, or any other sum, and claimed that there were various credits to which he was entitled, and which had not been given him by appellee, but that, if given proper credits, he would not owe appellee anything. He did not deny any specific item of the account, nor did he set up the particular credits to which he was entitled, although a motion to this effect was interposed and an order of the court made requiring him to do so.

The other appellants, sureties on the bond, answered, admitting their signatures to the bond, but alleged that it was to indemnify appellee against loss on its agency contract with Copeland in force at that time, which covered only "farm policies"; that later appellee and Copeland, without their knowledge or any notice to them, entered into another agency contract, by which Copeland was authorized to write "recording" or city business, and that they executed no bond to cover this particular contract; that full settlement had been made by Copeland with appellee for the "farm" agency business, and that there is no liability on the bond to cover the business done under the later contract, and that all the items in the account filed were for the "recording" agency business.

There was a verdict and judgment for appellee against all the appellants in the sum of $322.27.

To reverse this judgment, it is first said that the court erred in refusing to permit the appellant, Copeland, to testify to certain credits due him prior to March, 1924. There was no error in this regard, as appellee was not suing on an account prior to March, 1924. He failed to comply with the order of the court, made on motion of appellee, requiring him to make his answer more definite and certain, by setting out what credits he claimed, both prior to 1924 and subsequent thereto, and he would have therefore been in no condition to complain if the court had refused to permit him to testify regarding all credits, including those during 1924 and subsequent thereto as well as those prior thereto. The court did allow him to testify to the credits he claimed subsequent to March, 1924, and the jury gave him credit for all the items he claimed, thereby reducing the account to $322.27. In his testimony, Copeland did not question the correctness of any of the items in the statement of account charged against him, but only contended that he was entitled to certain credits, which the court permitted him to testify to, over appellee's objection. Having received credit for all these items, appellants are in no position to complain. Moreover, there is no showing in the record as to what particular credits he claimed on account of cancellations of policies prior to March, 1924.

The next assignment of error is that the court erred in refusing to permit appellant Copeland and his bondsman, appellant Brewer, to testify to the second alleged contract. Only one of the bondsmen, Mr. Brewer, offered to testify that he understood, at the time he signed the bond, that Copeland had a contract with appellee to write "farm" policies only, and that he was told this by Copeland himself, and that later Copeland made an additional contract by which he was to write "recording" or city business, about which he was not consulted, and of which he had no knowledge. Neither of the other bondsmen offered to testify to any such understanding.

There was no error in the court's refusal of such offered testimony, as the bond, the written contract between them and appellees, makes no reference to any particular contract between it and Copeland. Copeland is referred to in the bond "as agent of the company," and there is no limitation on his agency contained therein by reference to any agency contract, in writing or otherwise. By signing the bond, the sureties became liable as conditioned in the bond, to "punctually pay over * * * all amounts due or that may become due to it from time to time, for moneys collected or received by him for premiums on policies of insurance and renewals thereof, or for any other account whatever." In this respect it differs from the case of *Snodgrass* v. *Shader,* 113 Ark. 429, 168 S. W. 567, and the other cases cited by appellants, as in that case there was a written contract of lease particularly referred to in the bond, which was later changed without the knowledge or consent of the sureties. In the case at bar, however, no contract was referred to in the bond.

As said by this court in *Powell* v. *Fowler,* 85 Ark. 451, 108 S. W. 827, 122 Am. St. 41, a case cited by appellants: "If Fowler imposed additional duties upon Powell without altering the original contract, and which did not interfere with the performance of the contract, that would not operate as a release of the surety." In that case the court quoted from 27 Am. & E. Enc. of Law, page 499, as follows: "The general principle controlling in such cases is that the surety for the performance of the original duties is not discharged unless the new duties materially affect the performance of the old, or affect the obligation of the principal in respect to the old, thus increasing the risks of the surety." Since the bond did not refer to any particular agency contract then existing, but only referred to Copeland as its agent, and since the appellants agreed in the bond to stand good for all premiums collected by such agent, we fail to see why an enlargement of the scope of his business permitting him to write additional risks would be such a change in the duties of the agent as to relieve the sureties.

It is finally insisted that the court erred in instructing the jury that the burden was on appellants, and then permitting the appellee to open and close the argument to the jury. They rely on the recent case of *Dickerson* v. *St. Louis-San Francisco Ry. Co., ante,* p. 136. The facts in that case are not applicable to this. There the railroad company admitted the injury and death of the boys, for whose injury and death it was being sued for damages, but did not admit the amount of the damages sued for. This court held that the railroad company was not entitled to open and close the case, because it was still necessary for the plaintiffs to prove the amount of the damages. It voluntarily assumed the burden in the case and asked the right to open and close the argument, but was refused this right because there was still something for the plaintiffs to do in order to establish their case. The 6th subdivision of § 1292, C. & M. Digest, provides that the party having the burden of proof shall have the opening and conclusion. The right to open and close the argument to the jury is a matter to be determined by the pleadings in the case. *Beal & Doyle Dry Goods Co.* v. *Barton,* 80 Ark. 327, 97 S. W. 58; *Columbian Woodmen* v. *Howles,* 131 Ark. 299, 198 S. W. 286. In this case plaintiff alleged that appellants were indebted to it in a certain sum, which appellants denied. Therefore, under the state of the pleadings at the time the trial began, appellee was entitled to open and close, as it had the burden of proving its account against appellants. The fact that appellants did not dispute any of the items of account, but claimed that appellant Copeland was entitled to certain credits which had not been given him in the account, placed the burden on appellant to establish the credits, but still left the burden on the whole case on appellee.

We find no error, and the judgment is affirmed.